UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LILLIAN BAEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:20-cv-00174 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle, Sr. |
| | ) | |
| CAVALRY PORTFOLIO SERVICES, LLC, et al. | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| Defendants. | ) | |

**MOTION TO DISMISS CAVALRY DEFENDANTS**

"It is well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). But that's exactly what the plaintiff has done here: put words on a page. Based on nothing more than fanciful view of the facts and the law, and in contradiction to her own exhibits, Plaintiff merely suggests that Cavalry SPV I, LLC ("Cavalry") violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) ("FCRA"), by failing to conduct an investigation into her disputed information. In the absence of any factual allegations to support her claim, Count III must be dismissed.

I. **PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges she opened an account and incurred a debt with DSNB/Macy's. (Compl. ¶ 10.) At some point in 2018, Cavalry allegedly began reporting the debt to the national credit bureaus "as though it was the owner of the debt." (Compl. ¶ 12.) Plaintiff alleges she wrote a letter to Cavalry, "stating that Cavalry's reporting was not accurate." (Compl. ¶ 14.) On November 14, 2019, Cavalry wrote back, and provided "supporting

documentation," including copies of Macy's records; it did not, according to Plaintiff, provide documents "establishing [its] ownership of the debt," (Compl. ¶ 16-17). From this Plaintiff concludes Cavalry "has no purchase agreement" for the account and thus doesn't own it. (Compl. ¶ 18-19.)

Based on these allegations, Plaintiff contends that Cavalry violated the FCRA because it necessarily must have failed to:

1. Investigate the disputed information (Compl. ¶ 92);
2. Review all relevant information concerning her account provided by the consumer reporting agencies (Compl. ¶ 93-94);
3. Report the results of its investigation (Compl. ¶ 95-96);
4. Modify, delete, or block the disputed information if an item is found to be inaccurate or incomplete or cannot be verified (Compl. ¶ 99-100).

Yet none of these conclusory allegations are supported by any facts—*and indeed are contradicted by the exhibits to the Complaint*. Plaintiff includes a letter from Cavalry acknowledging receipt of her dispute, and stating that it:

1. Investigated the disputed information;
2. Reviewed all relevant information;
3. Reported the results of its investigation;
4. Determined, based on its investigation, that there was nothing inaccurate (and thus no obligation to modify, delete, or block the disputed information).

In other words, it complied in all respects with the provisions of the FCRA cited by Plaintiff.

## II. ARGUMENT

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. While the court takes as true all well-pled factual allegations, the plaintiff must plead *facts*—not legal conclusions or bald assertions—supporting a *plausible* claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Legal conclusions masquerading as factual

2

allegations are not taken as true and are insufficient to defeat a motion to dismiss. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). Thus, a plaintiff must do more than set forth "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013).

The exhibits to the complaint confirm that Cavalry followed the law. Stripped of its legal conclusions, Plaintiff's claim rests on the baseless grievance that Cavalry didn't provide her with a copy of a Purchase and Sale Agreement ("PSA"). But the FCRA doesn't require the production of documents, and Cavalry was under no obligation to provide this particular document (let alone any others) to Plaintiff. Beyond that, there are no allegations against Cavalry's affiliate, Cavalry Portfolio Services ("CPS"), so it should be dismissed with prejudice, as well.

### A. Plaintiff has not stated a claim for violation of Section 1681-s2(b).

The FCRA was enacted to provide for accuracy in credit reporting. 15 U.S.C. § 1681(b). Section 1681s-2(a) prohibits a furnisher from reporting information about a consumer that it reasonably believes is incomplete or inaccurate. *See* 15 U.S.C. §§ 1681s-2(a). There is no private right of action for the wrongful reporting itself, *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011), but Section 1681s-2(b) provides a cause of action where a furnisher fails to properly investigate a dispute over whether information it has submitted is incomplete or inaccurate. *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

To support her FCRA claim against Cavalry, Plaintiff recites five subsections of Section 1681s-2(b)(1), and then asserts that "Cavalry willfully and negligently failed" to comply with each one. (Compl. ¶ 91-100.) But, pleading no facts to support these conclusions, Plaintiff only "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Cairone v. McHenry Cty. Coll.*, No. 17-CV-4247, 2019 WL 3766112, at *6 (N.D. Ill. Aug. 9, 2019). And Plaintiff cannot "receive the benefit of imagination" where the exhibits confirm that Cavalry followed the law. This is because an exhibit to the complaint "is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "When a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *Scott v. Aon Hewitt Fin., Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *4 (N.D. Ill. Mar. 19, 2018), citing *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir. 1998).

Here, Plaintiff attaches and incorporates into her Complaint—twice—Cavalry's letter in response to her dispute. (See Compl. Exs. A and B.) This letter confirms that Cavalry complied in all respects with Section 1681s-2(b). The letter informs Plaintiff that Cavalry:

1. Investigated Plaintiff's credit reporting dispute (*consistent with* §1681s-2b(1)(A), "conduct an investigation with respect to disputed information").

2. Reviewed the dispute and verified the information listed on the account (*consistent with* §1681s-2b(1)(B), "review all relevant information").

3. Requested that the account be marked as disputed (*consistent with* §1681s-2b(1)(C), "report the results of the investigation").

4. Determined that there was nothing inaccurate regarding the account (*consistent with* § 1681s-2b(1)(E), modify, delete or block the disputed information *if an item is found to be inaccurate or incomplete or cannot be verified*).

Having confirmed that "based on [its] investigation of the dispute […] the information [it is] reporting to the consumer reporting agencies regarding the account is accurate," Cavalry,

4

was required to do nothing further. *See* §1681s-2b(1)(D), (E) (requiring no further action where the information disputed by a consumer was not found to be "incomplete or inaccurate"). *See Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 929 (N.D. Ill. 2000) (claim that defendant failed "to properly investigate the false and disputed information" in violation of Section 1681s-2(b) was insufficiently plead where plaintiff also alleged that defendant sent him a letter regarding the outcome of its investigation of the disputed information, leaving the court "hard pressed to conclude that [plaintiff] can now claim that [defendant] failed to properly investigate his credit information").

In light of this, Plaintiff's claim stands only on the legally deficient assertion that Cavalry ignored her request for a copy of the PSA. (*See* Compl. ¶ 16-19.) But there's no requirement in the FCRA that Cavalry provide Plaintiff with a confidential contract outlining the terms under which it buys accounts, nor does it require that Cavalry provide proof of ownership.[1] Indeed, Plaintiff does not point to any law that would require Cavalry to produce the PSA. Failure to produce a PSA upon request has no bearing on ownership and provides no support for Plaintiff's claim. As the exhibits to the Complaint show, Cavalry conducted an investigation confirming that it owned the debt, and its reporting was accurate. Therefore, on the face of the Complaint, Cavalry followed the law and Count III must be dismissed with prejudice.

---

[1] Nonetheless, Cavalry did give Plaintiff's counsel a copy of its bill of sale on February 4, 2020, as proof of ownership, and requested that Plaintiff voluntarily dismiss. (See. Ex. A.)

B. **The Complaint lacks any allegations against CPS.**

In addition, Plaintiff hasn't stated a claim against Cavalry Portfolio Services. Only two of the 102 paragraphs in the Complaint are directed at CPS. The first relates to a description of CPS for subject matter jurisdiction purposes, and the second alleges that CPS ultimately obtained the debt. (Compl ¶ 5, 11). The remaining allegations are all directed to Cavalry SPV. To prove a claim under Section 1681s-2(b), a plaintiff must establish: (1) that she disputed an inaccuracy by notifying a consumer reporting agency, (2) that the agency contacted the furnisher to alert it to the dispute, and (3) that the furnisher failed to conduct a reasonable investigation. *See Westra*, 409 F.3d at 827; *Jackson v. Experian Info. Sols., Inc.*, 2016 WL 2910027, at *3 (N.D. Ill. May 19, 2016). But, critically, Plaintiff doesn't allege either that CPS furnished any inaccurate credit information regarding the account, or that it failed to conduct a reasonable investigation after receiving notice from a CRA.

Faced with a similarly deficient pleading, the court in *Murray v. JPMorgan Chase N.A.* dismissed plaintiff's FCRA claim:

> The [plaintiffs] do not allege a violation of §1681s-2(b). The [Plaintiffs] do not allege that any credit reporting agency notified any Defendant in writing that any information provided to the agency was inaccurate: the [plaintiffs] do not allege that any Defendant failed to investigate after receiving such a notice; the [plaintiffs] do not allege that any Defendant failed to report the results of any such investigation to the credit reporting agency. The [plaintiffs] do not state a claim under the FCRA or any federal statute. The FCRA claim is dismissed.

2010 WL 3283012, *5 (C.D. Ill. Aug. 18, 2010). Here, Plaintiff alleges only that Cavalry, and not CPS, "began reporting the alleged debt as though it was the owner" (Compl. ¶ 12). And, the Complaint is devoid of allegations regarding any investigation conducted by CPS (in fact, CPS is not mentioned once in the fifteen paragraphs that comprise Count III (*see* ¶¶ 87-102)). Moreover, the Complaint does not even allege that CPS had notice of the dispute

6

to trigger liability under the FCRA, only that, "Cavalry received notice of Plaintiff's dispute" from the CRAs. (Compl. ¶ 89). *See Varnado v. Trans Union, LLC,* No. 03 C 6937, 2004 WL 1093488, at *2 (N.D. Ill. Apr. 29, 2004) (furnisher-defendant's "duty to conduct an investigation [under the FCRA] is triggered by proper notice pursuant to section 1681i(a)(2) provided by [a CRA]"). And so, like the plaintiffs in *Murray*, Plaintiff has not alleged a violation of §1681s-2(b) against CPS.

I. **CONCLUSION**

The exhibits to the Complaint contradict Plaintiff's legal conclusion that Cavalry violated the FCRA. Moreover, Cavalry had no obligation under the FCRA (or otherwise) to provide Plaintiff with a copy of its Purchase and Sale Agreement. Finally, Plaintiff's Complaint contains no allegations regarding CPS that could even remotely form the basis of an FCRA claim. For these reasons, Cavalry SPV I, LLC and Cavalry Portfolio Services respectfully request that the Court dismiss Count III of Plaintiff's Complaint with prejudice for failure to state a claim.

> Respectfully submitted,
>
> CAVALRY PORTFOLIO SERVICES, LLC;
> and CAVALRY SPV I, LLC,
>
> By: /s/ Marielise Fraioli
> One of their attorneys

Anna-Katrina S. Christakis
Marielise Fraioli
Pilgrim Christakis LLP
321 North Clark Street, 26th Floor
Chicago, Illinois 60654
Ph.: (312) 379-8547
Fax: (312) 939-0983
kchristakis@pilgrimchristakis.com
mfraioli@pilgrimchristakis.com

**CERTIFICATE OF SERVICE**

    Marielise Fraioli, an attorney, certifies that on March 17, 2020, she electronically filed the foregoing **Motion to Dismiss Cavalry Defendants** with the Clerk of the Court using the CM/ECF system, which will send a notification to all attorneys of record.

                                                 /s/ Marielise Fraioli